EASTERN DIST.
*January,* 1835.

CLARK ET ALS.
*vs.*
GIFFORD ET ALS.

## CLARK ET ALS. *vs.* GIFFORD ET ALS.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.

The signal for *steam*, made by the captain of a vessel on entering the mouth of the Mississippi river, does not confer on him the obligation of a contract of towage, with the first tow-boat coming along side. Up to the time when the ship is actually taken in tow, and the voyage commenced, the captain of the vessel is at liberty to change his mind, and employ another boat.

No usage or custom of steam-boats and tow-boats, that the first coming along side of a ship, on a signal made for *steam*, has thereby an absolute towage contract, at an established rate, to tow the vessel into the port of New-Orleans, *is binding*, when such custom has only prevailed five or six years, among those having an interest in establishing it.

This is an action against the captain and owners of the ship Tarquin, to recover of them three hundred and fifty dollars, for an alleged breach of contract, to tow said ship from the Balize to New-Orleans.

The plaintiffs allege they are joint owners of the tow-boat Huntress, and that at the special instance and request of the master of said ship, made known by signal, they came along side, made fast, and commenced towing the ship, the contract being expressly and tacitly agreed on with the captain, to tow her to the city for three hundred and fifty dollars; when without any cause or reason, but merely through whim captain Gifford refused to be towed by the Huntress, and employed another boat. The plaintiffs now claim the sum of three hundred and fifty dollars, as the price due on their contract, in undertaking and agreeing to tow said ship to the city of New-Orleans, from the Balize.

The defendants pleaded a general denial.

The evidence on which the case was tried, is fully stated in the opinion of this court.

The parish judge decided, that the testimony established it as the prevailing rule or custom of tow-boats, on the Mississippi, that when a vessel makes signal for *steam*, the first boat that gets along side, is entitled to tow her up.

2. That this rule or custom being thus established, every vessel making signal for steam, comes under an implied contract, to be towed by the first boat coming along side.

3. An exception might probably exist, if the boat offering her services, was not of sufficient power.

4. It is in evidence in this case, that the tow-boat Huntress, on signal made from the ship Tarquin, was the first boat along side, and boarded, and after being nearly made fast, was discharged by the captain of the ship, and the tow-boat Grampus employed to tow her.

5. That the Grampus is shown by the testimony, to be of less power and speed than the Huntress.

6. That the price of towage is proved to be three hundred and fifty dollars. Judgment was rendered accordingly for this sum. After an unsuccessful attempt to obtain a new trial, the defendants appealed.

*Roselius*, for the plaintiff.

1. The contract is sufficiently proved. The captain of the Tarquin made a general signal for *steam*, which must be considered as a proposition, and the coming along side by the Huntress, was an acceptance of the proposition, by which the contract was completed. *La. Code*, 1792, *Ibid.*, 1811.

2. The usage is sufficiently shown, and may be considered as additional evidence of the contract. *La. Code*, 1958, 1961.

The *quantum* of damages is fully established by the evidence. *La. Code*, 1928.

*T. Slidell*, for the defendants. The custom or usage relied on, to sustain the plaintiffs' demand, should be repudiated.

1. Because it is in evidence, that the tow-boats have only been in use on the Mississippi, for about the last six years, and

a custom cannot grow up and assume the force of law, in so short a period. *La. Code, art.* 3. 2 *Starkie, Note* 450. *Febrero, part* 11, *lib.* 1, *cap.* 5, § 4, 26. 1 *Pothier, Clef des Lois Romaines Coûtume*, 159.

2. Even if a custom could be established in so short a time, yet the evidence adduced by plaintiff is not sufficient to prove its existence. 1 *Gallison,* 444. 1 *Martin, N. S.* 192. 2 *Starkie on Evidence,* 448. *Febrero, ubi super.*

3. Even were the custom sufficiently proven, it should not be recognised, because it is neither consistent with natural equity, nor with the spirit of positive laws on the subject of obligations. 1 *Pothier,* 165.

4. Although the court should consider, that under the circumstances, and by force of the usage set up, the defendant must be deemed to have contracted to employ the plaintiff to tow his vessel to New-Orleans, yet the damages given for the inexecution of this obligation are excessive, and should be reduced to the amount of loss actually sustained by plaintiff. *La. Code,* 1924, 1928, *sec.* 1, 2, 3.

*Mathews J.,* delivered the opinion of the court.

This is a suit brought by the captain and owners of the steam-boat Huntress, employed as a tow-boat for vessels, passing between New-Orleans and the Balize, against the captain and owners of the ship Tarquin. The plaintiffs base their action on a contract for towing, made between the captain of the steam-boat and the captain of the ship, by which it was agreed between the parties, that the latter should be towed to New-Orleans by the former, at the usual or customary price for such a voyage of towing, which is averred to be three hundred and fifty dollars. Judgment for this sum was rendered against the defendant, in the court below, from which they appealed.

The testimony of the case shows it to be novel, and although not of much consequence as relates to the amount in controversy, it may be considered somewhat important, as

establishing principles concerning the interpretation of contracts like that on which the plaintiffs rely for a recovery in the present instance.

It appears by the testimony, that the ship was at an anchor, in the south west pass of the Mississippi, having been piloted over the bar. At the same time, two tow-boats were laying some distance below her. A signal for steam appeared on board the ship, and these two boats got under way and approached her, the boat for the benefit of whose owners the value of the towage is claimed, and the Grampus. The former came first along side the ship, and was about making fast to her for the purpose of towing, when the captain of the vessel refused to be towed by her, and was finally, by agreement, towed to the city by the latter. These we believe to be all the important facts established by the testimony.

From these facts a question arises, whether any contract was created, binding on the parties, sufficient to compel the master of the tow-boat to convey the ship to the port of New-Orleans, and to oblige the captain of the latter to submit his vessel to be towed by the former, from the *terminus a quo* to the *terminus ad quam*, and to pay the usual price of such towage.

Contracts are either express or implied, from which obligations arise to do or not to do, &c. To their perfection they require the consent of two parties at least, or the concurrence of two wills. When this consent is made by words, in the ordinary mode of conveying ideas from one person to another, they are express; when an obligation results from the circumstances of a case, the contract is said to be implied or tacit, that is when the agreement is not entered into by words or writing, and although a contract may be made by signs, yet as they are not the ordinary mode of communicating ideas, such a contract must be viewed as partaking rather of the latter class than the former; but the obligations resulting from either species, may be enforced; in other words, the obligations arising from both, are what the law terms perfect.

EASTERN DIST.
*January*, 1835.

CLARK ET ALS.
*vs.*
GIFFORD ET ALS.

The signal for *steam*, made by the captain of a vessel, on entering the mouth of the Mississippi river, does not confer on him the obligation of a contract of towage with the first tow-boat coming along side. Up to the time when the ship is actually taken in tow, and the voyage commenced, the captain of the vessel is at liberty to change his mind, and employ another boat.

No usage or custom of steam-boats and tow-boats, that the first coming along side of a ship on a signal made for *steam*, has thereby an absolute towage contract, at an

The contract contended for on the part of the plaintiffs, is tacit, being made by signs, and if it were complete would produce reciprocal obligations on the parties, *i. e.*, if it necessarily results from the signal given by the captain of the ship, and the subsequent conduct of the master of the tow-boat, that the one asked the other to tow his vessel to New-Orleans, and the latter consented so to do, the contract would be complete, and obligatory on both the contracting parties; but on general principles of law, we do not think the facts of the case authorise such a conclusion. We take for granted, that the commanders of most of the vessels, if not all, arriving from sea at the mouths of the river, know that there are a number of steam-boats in the neighborhood, whose constant employment is to tow such vessels to the port of New-Orleans, and that their masters are always ready and willing to answer any signal for steam, by conducting that boat to the place of the signal. Such signal seems to us, to express nothing more on the part of a captain who makes it, than a wish or desire to have his ship aided in her progress by a steam-boat, but does not amount to an absolute consent and agreement to be towed by the first boat that may choose to come along side of his vessel, or any other that may subsequently come near to her. He would be at liberty to change his mind, and refuse to be towed, up to the time when his vessel was actually taken in tow, and the voyage commenced; and on such change of will, no contract would properly take place, in relation to any particular voyage. If therefore, the master of the vessel could refuse altogether to be towed, without violating any contract, because none had really been made, it follows as a corrollary, that when two boats make their appearance, a commander of a ship may contract with the proper officer of one of them, as he may select, without any injury to any rights of the other, which was done in the present case. Though perhaps when on a signal for steam, only one boat approached the vessel, and the captain refused to be towed, he and his owner might be bound to remunerate the owner of the boat for the unnecessary trouble and expense

to which they may have been put, by the wavering and indecisive conduct of the person who caused such expense.

As to the arguments based on the proof of a pretended custom, prevailing amongst the different masters and owners of tow-boats, plying between the city and the Balize, we consider them as entitled to little consideration. It would be an extraordinary occurrence in legislation, established by custom and usage, to give to a few steam-boat captains, and the owners of tow-boats authority to make laws, in consequence of a usage which relates solely to their own interests, of a duration of not more than five or six years, to have a binding force on the owners of vessels over the whole world.

*Eastern Dist.*
*January, 1835.*

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be avoided, reversed and annulled; and it is further ordered, adjudged and decreed, that judgment be here entered for the defendants and appellants, as in case of non-suit, with costs in both courts.