AMARON LEDOUX and another *v.* JAMES ARMOR.

Where several things sold together, *e. g.* so many coils of bale rope, are independent of each other, not forming a whole, and their value is not increased by their union, a redhibitory action will lie only for the things found defective, and the contract must be carried into effect as to the rest. Such is the clear inference from art. 2518 of the Civil Code.

In the absence of any expression of legislative will, proof of its being the commercial custom of a particular place as to certain articles, to take back the whole lot sold, and to restore the price on the discovery of any portion being defective, would be entitled to some weight, if shown to have existed long enough to have become generally known, and to warrant the presumption that contracts were made in relation to it ; but where the law has provided a rule, no customs of any set of men can have a force paramount to the law.

Pending an action for the rescission of a sale, vendees sold the article which was the subject of the contract, without the consent of defendant, or any order of court. *Held,* that the return of the thing sold is indispensable to a recovery in any redhibitory action, and that by such sale the plaintiffs disabled themselves from recovering.

APPEAL from the Commercial Court of New Orleans, *Watts,* J. Plaintiffs purchased from the defendant a number of coils of bale rope, a part of which proving to be of an inferior quality, or materially damaged, they instituted the present action to obtain a rescission of the sale ; and the only question presented by the record is, whether, in consequence of the bad quality of a part of the coils, the vendees have a right to rescind the whole contract. The judge below thought not, and from his decision the plaintiffs have appealed.

*L. Janin,* for the appellants. The evidence offered by plaintiffs to prove the commercial usage of New Orleans, in regard to sales of bale rope, should have been received. 2 Troplong, Vente, p. 11, no. 549. " *Un marchand qui achète des pièces de siamoise* (nankin) *peut ensuite-faire annuller son marché, s'il y découvre des vices lors de l'aunage.*" Dalloz, Dictionnaire, vol. 3, p. 9. no. 292. In 3 Rawle, 101, it was held that evidence was admissible to prove that by custom or usage in Philadelphia, the seller of cotton is answerable to the buyer for any latent defect, though there be neither fraud nor warranty. In this case, a part of a lot of fifty bales of cotton was damaged, and the whole sale was re-

scinded. In doubtful cases, proof of usage should be admitted. " *Si les usages sont contradictoire on doit décider en faveur du debiteur.*" 3 Dalloz, Dictionn. p. 490, No. 722. 6 Toullier, No. 319. The sale was by sample ; and the defects are not apparent ones. " *Dans une foule de cas,*" says Duranton, vol. 16, p. 339, "*un vice peut être apparent par lui-méme, et cependant, à raison de telle ou telle circonstance, il est possible qu'il n'ait pu être connu de l'acheteur. Tel serait le cas où la chose n'était pas sous ses yeux au moment du contrat ; tel est le cas ausi où elle était dans un magasin fort obscur, ou placée sous d'autres marchandises, ce qui ne permettait pas à l'acheteur de l'examiner commodément et sous toutes ses faces, achetant ainsi de confiance.*" No article of merchandize is more analogous to that which gave rise to this contest, than cotton in bales ; and in the case of *Boorman* v. *Jenkins,* 12 Wendell, 246, it was held, that every sale of packed cotton is, by usage, a sale by sample, and *per se* a warranty, and the rule *caveat emptor* does not apply.

*Cooley,* on the same side, to show that the lower court erred in rejecting evidence of the custom, cited, Civil Code, arts. 1897, 1958, 1959, 1961. 16 Duranton, No. 529. Journal du Palais, vol. 20, p. 954. (Cour Royale de Caen, 22 Nov. 1826.) Plaintiffs would not have purchased at all, had they been aware that the defects existed ; the sale should, consequently, be rescinded. Civ. Code, arts. 2496, 2497, 2507, 2509. *Williams* v. *Miller,* 9 La. 132. It must be rescinded *in toto.* Civil Code, arts. 2518, 2521, 2487. Journal du Palais, vol. 5, no. 506. Merlin, D. de J. *verbo* Redhibitoire, No. 11. The defects in the rope were not apparent. Civ. Code, art. 2497. 16 Duranton, 310, and *Miller* v. *Williams,* cited above.

*L. Peirce,* for the defendant, contended that the sale could, under no circumstances, be entirely rescinded. Civil Code, art. 2518.

*C. M. Jones* and *Benjamin,* for the parties cited in warranty.

MORPHY, J. The petitioners seek to rescind the sale of 401 coils of bale rope, which they bought of the defendant on the 2d of September, 1840, at the rate of twelve and one-half cents per pound, making a sum of $5,872 62, for which they gave their two promissory notes of $2,936 31 each, payable four months after

date.  They represent, in substance, that the rope was bought upon a sample of it left by the defendant at the store of Layet & Amelung, his agents.  That shortly after their purchase, they sent a few coils of this rope to some of their friends and customers in the country, but that the same was immediately returned to them as being of bad quality, and too defective for the purpose for which it was intended, to wit, the baling of cotton. That they then had some of this rope tried in various cotton presses, after giving the defendant notice thereof, and that it was found, both by the trial at the cotton presses, and by separately opening and examining many coils, that notwithstanding its deceptive appearance, nearly the whole of this rope was either twice laid, rotten, or otherwise damaged, and so packed as to conceal as much as possible its defects.  They further represent, that the defects of this rope were not apparent, and that owing to the nature of the article, and the manner of packing it, it is neither customary nor practicable, to institute such a minute inquiry on the purchase of a large lot of bale rope, as will bring such defects to light, and that by the mercantile custom of New Orleans, the sale of a parcel of that article is considered as null and void, if a large proportion, though not the whole of it, be of bad quality ; that in September last, they offered to return the whole lot of this rope to the defendant, and claimed of him the restitution of their notes, but that he refused so to do ; and that since then, to wit, on the 5th of January ensuing, they were obliged to pay one of their notes which had been negotiated by the defendant, but that the other one is still under protest in his hands.  They pray that the sale of the rope may be rescinded, and that Armor be decreed to return to them their unpaid note of $2,936 31, and to reimburse to them an equal amount for the note paid by them, with interest, &c.  The defendant admitted the sale, but denied all the other allegations of the petition.  He further averred that he had himself, purchased the rope from Samuel Bell and A. H. Wallace & Co., and called them in warranty.  He moreover claimed in reconvention, the payment of the note of $2936 31, still in his possession.  The warrantors pleaded the general issue.  The Judge below being of opinion that the petitioners were not entitled to a rescission of the whole contract, and not finding the evidence such

as to enable him to pronounce satisfactorily upon their rights, decreed that the plaintiffs should pay to the defendant, the sum claimed in reconvention, but reserved to them their claim for a rescission of the contract, or a diminution of the price on such portion of the rope as may be proved to be unmerchantable. A motion for a new trial was made by the plaintiffs, during the pendency of which they caused all the rope, which they had kept until then in their store, to be sold at auction, after giving notice of the sale to the defendant and warrantors. The parties then appear to have submitted the cause anew to the judge, to be finally adjudicated upon, after having introduced some additional evidence in relation to the sale which had taken place. The judge, thereupon, allowed the plaintiffs a reduction of the price, which being found insufficient, this appeal was taken.

The evidence adduced, on the first hearing of this cause below, clearly established that a considerable portion of the rope which the plaintiffs had purchased, was of bad quality, and some of it altogether unfit for the purpose for which it was intended; but it also showed that the lot contained a quantity, not exactly ascertained, of good and merchantable rope. Had the plaintiffs separated the sound rope from that which was defective, and confined their claim for redhibition, or a reduction of the price, to that portion of the goods which as unmerchantable, they would have had no difficulty in their way. The record even shows, that had they not misconceived the extent of their legal rights, they might have obtained justice, without engaging in the long and unprofitable litigation which has brought them before us. Upon their first complaint to the defendant, Samuel Bell, who had sold to the latter 268 coils of the rope, offered to exchange good rope for an equal quantity of any sold by him that would be pronounced by a competent judge of the article, not to be sound rope. But the plaintiffs, conceiving that they had a right to insist upon a rescission of the whole purchase, instituted in the Parish Court, in September, 1840, a redhibitory suit which they discontinued several months after; and then brought the present action, in which they again contend for the rescission of the sale *in toto*. The main question then, and perhaps the only one which this case presents, is, whether in consequence of the bad quality of a certain number

of the coils of rope by them purchased, they are entitled to have the whole contract annulled. Our law is explicit on this subject. It provides, (Civil Code, art. 2518,) that " the redhibitory vice of one of several things sold together gives rise to the redhibition of all, if the things were matched, as a pair of horses, or a yoke of oxen." From this provision the inference is clear that if the several things sold together are independent of each other, and do not form a whole, and if the value of each thing is not increased by its union with the rest, a redhibitory action can be maintained only for those things which are found defective, and that the contract must stand and be carried into effect in relation to the others. 6 Mart. 696. 3 Ib. N. S. 100. Pothier, De la Vente, Nos. 226, 227, 228. But it is said, that there exists a custom, or commercial usage in New Orleans, which authorizes the purchaser of a large quantity of rope to return the whole parcel to the seller and receive back his money, if he discovers that a part of it is defective. In the absence of any expression of legislative will on the subject, such a custom or usage would have been entitled to some weight, provided it had existed a sufficient length of time to have become generally known, and to warrant the presumption that contracts were made in relation to it. But where the law is express, no man or set of men can create a custom for their own benefit or convenience, and give to that custom a force paramount to that of the law. 12 Mart. 26. 6 Ib. N. S. 528. 567. 3 La. 394. 7 La. 528. The Judge, therefore, properly refused to hear testimony tending to show the prevalence of any such commercial usage. The custom is said to have sprung from the impossibility of distinguishing the good from the bad rope in the purchase of a large lot, by reason of the deceptive appearance of the article. This may be true, on the cursory examination usually made at the time of a sale, especially when samples are exhibited. But if, after the purchase it is discovered, that there are in the lot some portions defective and unmerchantable, we cannot believe it impossible, or even very difficult, upon a close inspection, to separate the good rope from the bad; and the testimony in this very case shows that it is in no wise impracticable. More than one year after the sale to the plaintiffs, Taylor and Jonau, two of their witnesses, examined every coil of the rope separately, and found that there was rope of three quali-

ties, 77 coils of good merchantable rope, 48 coils doubtful, and 250
coils of bad rope.   Had the plaintiffs given evidence of the value
of the damaged rope, made an actual separation of the good from
the bad, and proved the weight of the bale, the judge below could·
have either annulled the sale of the defective coils, or allowed a
reduction of the price according to the evidence ; but, pertinacious-
ly insisting upon a rescission of the whole contract, they thought
it sufficient for their purpose to prove generally, that a considera-
ble portion of the lot was defective.   Having kept the rope until
then in their store, the plaintiffs had it yet in their power to obtain
relief, either, by a new trial, or perhaps by an appeal ; but by
yielding, as they say they did, to the suggestions of the inferior
Judge, and selling the rope, they have disabled themselves from
returning the thing sold to the sellers, which is one of the indis-
pensable requisites in every case of redhibition.   It does not even
satisfactorily appear that this sale was made by consent.   It is
true that they gave notice to the defendant, and his warrantors, of
their intention to sell ; but the defendants made no answer, ex-·
cept one of them, Mr. Samuel Bell, who objected to the terms of
the sale, and protested against such a sale being considered a test
of the value of the rope, for which he held himself in no manner
bound to them.   This rather threw upon the plaintiffs the respon-
sibility of the correctness of the course they were pursuing.   The
sale took place on the 15th of December, 1841, at which time it
appears that there had been a considerable decline in the value of
the article, and it was made under a classification of four different
qualities.   At this sale the plaintiffs bought in themselves one
hundred coils, which were considered as the best.   They paid six and
half cents per pound for the first fifty coils.   This price appears to
have been the market price of sound rope at that time, for two lots
of good and merchantable rope, warranted as such, which were
sold one on the same day, and the other a few days after, brought
only six and half cents per pound.   The second quality of this
rope sold for six cents, the third at five cents and seven-eights and
the fourth at five cents per pound.   The slight difference between
these several prices renders it probable that there was not, between ·
the different qualities of rope, such a great difference as that re-
presented by Thompson and Jonau.   Having no evidence before

him of the value of the damaged or inferior coils of rope, the Judge below adopted the public sale as his guide in determining the reduction of price to be allowed the plaintiffs. He accordingly made no reduction on one-third of the rope, which was about the quantity purchased of Wallace & Co., and which is proved to have been sound. On the next third he allowed a reduction of fifteen per cent. on the original price, and on the balance twenty-five per cent. Under the peculiar circumstances of this case we cannot say that the Judge erred. If the plaintiffs have not obtained the full measure of indemnity to which they were perhaps originally entitled, they must blame for it no one but themselves. By persisting throughout in their own view of the extent of their right, they have so acted as to place it out of the power of the Judge to grant them either a rescission of the contract for any portion of the goods, or such a reduction of the price as, under the facts of their case, they might otherwise have obtained. 1 Mart. N. S. 317. Pothier, De la Vente, Nos. 217, 222. 6 Troplong, Vente. 2 Ve. No. 567. No appeal has been taken by the defendant from the judgment rendered in favor of the warrantors.

*Judgment affirmed.*