No. 907

First Circuit

PLAUCHE, LOCKE SECURITIES, INC., v. B. BAZERQUE & SONS

(February 8, 1932.   Opinion and Decree.)

Cline, Plauche & Girod, of Lake Charles, attorneys for plaintiff, appellant.

Pugh & Buatt, of Crowley, attorneys for defendant, appellee.

ELLIOTT, J. Plauche, Locke Securities, Inc., owners and holders of a note for $250, signed by B. Bazerque & Sons, alleging that the maker of the note was a commercial firm composed of Bertrand Bazerque, Sr., and Bertrand Bazerque, Jr., and others unknown to the petitioner, brought suit against the firm and Bertrand Bazerque, Sr., and Bertrand Bazerque, Jr., and prayed in interrogatories annexed to the petition that the defendants be required to give the names of the other members of the firm and for judgment against them on the note. It developed from the answers of the parties sued that Bertrand Bazerque, Sr., was a baker engaged in the business of baking and selling bread, etc., doing business under the trade-name of B. Bazerque & Sons, but was the sole owner of the business and had no partner.

Bertrand Bazerque, Sr., admitted that the signature of the note bound him, but he denied that he owed the note. He alleges that it represents the balance due on the purchase price of a truck, Dodge make, bought by him from the plaintiff. The note is payable to the order of the defendant, but was not indorsed. Defendant admits, however, in his answer that the plaintiff is the owner and the holder of the note. He sought to have the plaintiff compelled to produce the act of sale whereby he bought the truck, but the court did not order it done, and it was not produced and is not in the record. Defendant sets up in his answer that in buying the truck, he paid $50 cash and gave the note sued on for the balance payable in installments. That he paid the first installment of $25, but refused to pay any more for the reason that the note was without consideration, the truck for which it was given being worthless, and in his answer he tenders it back to the plaintiff. That during the time he sought to use it, he was forced to expend $108.68 for repairs and worn-out and broken parts. He prays that plaintiff's demand be rejected and that he have judgment against it in reconvention for the $75 paid on the truck and the $108.68 expended for repairs and parts as above stated.

There was judgment in the lower court rejecting the plaintiff's demand and against the plaintiff in reconvention for $75, the amount paid on the truck, but nothing was allowed the defendant on account of repairs on the truck, parts, and mechanic bills. The plaintiff has appealed.

There is very little to be said in support of the consideration of the note sued on. The plaintiff contends that it ought to be paid, but the proof is that the truck for which it was given in part payment was worthless; therefore it would be unjust to require defendant to pay the note. The evidence shows that S. J. Hollier was the owner and possessor of the truck at the time defendant decided to buy it for the purpose of delivering bread and other products of his bakery at Crowley and adjacent territory of Kaplan and Abbeville. Mr.

Hollier had bought it five or six months before from the plaintiff. Mr. Hollier's business required the use of a truck, and he had used this one since buying it from the plaintiff. The price Mr. Hollier was to pay for it was not established, but in a question asked him it was stated to have been $617.50. It was shown that Hollier had made various payments to the plaintiff on the truck and was still owing $375 or $400 on account of same to the plaintiff at the time it was sold to the defendant. Mr. Hollier living in Crowley, and a neighbor to the defendant, learned that defendant needed an automobile truck for delivery purposes and told him he could buy this one by consulting the plaintiff. And in the course of a day or so, how it came about is not clear, plaintiff's officer who lived at Lake Charles came to Crowley, got into communication with defendant, through Hollier, and in the space of about an hour after arriving, repossessed itself of the truck from Hollier, taking it back without passing any act of retrocession and in full settlement of the $375 or $400 which Hollier owed on it, and sold and delivered it to the defendant for $300, receiving $50 cash and the note sued on.

At the time Hollier bought it from plaintiff, it did not have in it the engine that was in it when new. The one in it then had been taken out and a newly worked over but secondhand engine had been installed in it. There is some conflict in the testimony as to what Mr. Hollier, who was the active agent in selling the truck to the defendant, told him about it at the time. Mr. Hollier admits that he told him that it was in good condition, except that it had a slightly flat crank shaft. Defendant testifies that Mr. Hollier told him it was in good condition and had in it a new mo-

tor and said nothing about a flat crank shaft. Mr. Hollier says that he did not tell defendant that it had a new motor but a newly worked over motor, but, even so, that was not correct, because it had been five or six months since the motor had been worked over and it had been in use ever since Hollier had acquired it. The plaintiff was the real actual seller in con-tracting with defendant, yet Mr. Hollier contrived to bring about the sale and took an active part in effecting it. He, in effect, unloaded the truck from his own shoulders, getting himself fully discharged of his debt in amount $375 or $400 on account of it to the plaintiff, and, the plaintiff helping and assisting, the truck was transferred to the defendant at a price $75 or $100 less than the amount due on it at the time by Mr. Hollier.

The truck commenced to give defendant trouble almost immediately when put to use delivering bread, etc. First one thing and then another got out of order, and the truck would stop in the road and the driver would have to have it pulled in for repairs. It was not the fault of the driver, but was with the machinery of the truck. Defendant had automobile mechanics fix it, recondition it, put in new parts, etc., so it could be again started on the road, but it had ceased to be serviceable. With-in the short space of time of say 40 or 50 days after buying it, defendant had paid out at different automobile repair shops the sum of $108.68. This amount of ex-penditure, for the purpose of making the truck give service, within such a short time after buying it, justified defendant in discarding it as was done and putting it out of his way as being worthless to him.

We are satisfied that it was unserviceable, due to its worn-out condition, at the time defendant bought it. As for the actual knowledge that plaintiff had concerning its condition at the time of the sale to the defendant there is no direct proof, but various things indicate that plaintiff knew at the time that it was worthless. For instance, in repossessing the truck from Hollier, no act of retrocession was passed. Hollier was just discharged as debtor and the truck with its burden shifted to defendant. The note which defendant gave, and on which the plaintiff has sued, was secured by a chattel mortgage reserved on the truck, but plaintiff did not have the mortgage recorded. It is our conclusion that plaintiff knew that the truck at the time it was sold to defendant was, because of its condition, not capable of any useful service and omitted to declare its vices to the defendant. Its vices at the time were not apparent to defendant, who was not well informed as to such matters; the discovery at the time of the sale would have required the work of an expert automobile mechanic. The implied obligation of warranty which was incumbent on the plaintiff was considered in Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871, and Jackson v. Breard Motor Co., 167 La. 857, 120 So. 478.

"The seller, who knows the vices of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages." Civ. Code, art. 2545.

The defendant likely got out of the truck during the time he sought to use it sufficient service to repay him for the gasoline and oil necessary in its operation, but nothing more.

The plaintiff contends that it cannot be compelled to return the purchase price, nor repay the expenses which the truck occasioned to the defendant, because defendant does not specifically pray for the rescission of the sale. Defendant does not specifically pray that the sale be rescinded, nor do we find the usual prayer for general relief; but he alleges defects of the kind stated, the bad faith of the plaintiff, tenders the truck back to the plaintiff, and prays for judgment in reconvention for the return of the purchase price and the repayment of expenses up to the amount expended.

The evidence establishing these averments was introduced on the trial without objection; the evidence establishes defendant's right to appropriate relief, and where evidence has been thus received, we can give it effect in the form of a judgment based thereon. The authorities cited in defendant's brief support such right in the court.

Plaintiff cites us to the case Ledoux v. Armor, 4 Rob. 381. That case was based on a sale of rope, part of which was worthless; some had value, but was not the kind represented, while part was good rope. Defendant divested himself of all the rope and could not tender back that which had value and that which was good. We do not have that situation in hand.

Richardson v. Johnson, 1 La. Ann. 389, cited by plaintiff, was dismissed on an exception of no cause of action, based on the ground that plaintiff's petition was not sufficient in law to grant the relief prayed for. We are not dealing with an exception of that kind, for in this case the evidence was received without objection. New

Orleans & N. E. Railroad Co. v. Louisiana Construction & Imp. Co., 49 La. Ann. 49, 21 So. 171, and New Orleans Silica Brick Co. v. John Thatcher & Son, 160 La. 392, 107 So. 236, are also cited, but these were not rulings which prevent the rendition of the judgment which we find proper under the evidence in the present case.

The ruling of the lower court rejecting plaintiff's demand and condemning it to pay back in reconvention the price received was correct, but in our appreciation the evidence is such that plaintiff should be required to reimburse the defendant for the expense he was put to on account of mechanics and for repairs and parts.

The plaintiff is entitled to have back the truck in the place and condition in which it is.

For these reasons the law and the evidence being in favor thereof, the judgment appealed from, to the extent that it rejects plaintiff's demand and condemns it to pay to the defendant in reconvention the sum of $75, is correct and it is now affirmed; but it is erroneous and must be amended and corrected to the extent that defendant's demand in reconvention for $108.68 on account of mechanic's bills for repairs and parts on account of the truck were not allowed, and it is now ordered that the plaintiff Plauche, Locke Securities, Inc., pay to the defendant Bertrand Bazerque, Sr., in addition to the sum allowed in the lower court, the further sum of $108.68, with legal interest thereon from September 19, 1931, until paid, and as thus amended and corrected the judgment appealed from herein is affirmed.

Plaintiff-appellant to pay the cost in both courts.